JOHN W. MASON *vs.* WILLIAM TAYLOR.

December 20, 1887.

**Principal and Agent.**—Contract examined and construed. *Held* to create a general agency.

**Same.**—Facts, independently of said contract, *held* sufficient to warrant the findings in plaintiff's favor.

Appeal by defendant from an order of the district court for Otter Tail county, *Baxter*, J., presiding, refusing a new trial. The action was tried by the court without a jury, and judgment directed for plaintiff for $1,338.

*Clapp & Woodard*, for appellant.

*Chas. D. Kerr*, for respondent.

COLLINS, J. This is an action to recover compensation for legal services alleged to have been rendered by plaintiff, an attorney residing at Fergus Falls, for defendant, a resident of Scotland. He contends that said services, the value of which is not in dispute, were performed for Miller & McMaster, a real-estate firm at said Fergus, and not for him. That they were so performed in connection with certain investments made for defendant, and property owned by him, the care of which he had intrusted to said firm, is conceded.

While a determination of the purport and effect of the contract under which Miller & McMaster acted is not, in our judgment, necessary to an affirmance of the conclusions of the court below, it was the foundation of all that subsequently transpired, and must therefore characterize the nature of the relations which actually existed between the three parties thereto,—this defendant, of the first; Hay, of the second; and Miller & McMaster, of the third part,—in all that was done under it, and may well be discussed, and the *status* of each party settled. In brief, it bestowed upon Miller & McMaster plenary power to invest in town lots and farm lands in Minnesota and Dakota such sums of money as defendant and his undisclosed constituents might see fit to transmit through Mr. Hay; to erect buildings thereon, rent the same, and collect said rents; to insure said buildings; and to sell

such property, without consulting their principal, whenever they could do so at a profit. Titles were to be taken in Taylor's name, the muniments thereof to be sent him when recorded. It was to continue for four years, and then, within one year after notice, the firm was to realize from their investments the defendant's capital and return it to him. This they covenanted to do, thus becoming guarantors of the principal intrusted to them. Taylor reserved no rights whatsoever, but all was left to the judgment of the men with whom he was dealing, who were to be compensated by retaining one-fourth of the excess of the earnings over 10 per cent. per annum upon the capital, and, in case of sale under notice, to realize and account for one-fourth of the profits derived, which should be in full to them for their own and their attorney's charges and expenses.

The pertinent inquiry is, did this in fact constitute Miller & McMaster the general agents of Taylor? The relation of principal and agent arises whenever one authorizes another to do acts or make engagements in his name, and is of several distinct kinds. A general agency exists when there is a delegation to do all acts connected with a particular trade or business. Story, Agency, § 17. It is true that in the case at bar the agents guarantied a return to Taylor of his entire capital; that they were not to receive compensation except from the profits; and that, in case of sale upon notice after four years, a share of the profits should cover all expenses, as well as their own pay. But this did not vary or limit the authority delegated by defendant to his agents to do all and every act requisite to the particular business contemplated,—the investment of money in land, the sale thereof, the erection of houses, the insurance, leasing, and collection of rents. They simply, as such agents, undertook to keep the capital unimpaired by guarantying its return, and by looking to its earnings for their remuneration,—not an uncommon thing to do in some lines of trade, and in nowise changing the relationship. *Dows* v. *Morse*, 62 Iowa, 231, (17 N. W. Rep. 495.) Of this feature of the contract plaintiff had no knowledge until after he performed the services. If he had, it would have been sufficient to prevent recovery in this action; but such knowledge would not have made the agency itself anything but general. It can belong to no other class.

But independently of the fact that a general agency was created, the finding for plaintiff must be upheld. Having no knowledge whatever of the contract, plaintiff was justified in relying upon the apparent authority enjoyed by defendant's agents. The principal resided in Scotland, and carried on his large business through the firm of Miller & McMaster for over three years. They bought and sold, they built and leased houses, they did a general real-estate business, in his name, investing about $200,000. Titles were examined by plaintiff; he was consulted generally in regard to the matters that might be expected to arise in such an extensive business; and lawsuits in which Taylor was defendant as well as plaintiff were managed by him professionally from the beginning of such agency to its termination. In so employing plaintiff, the agents were acting within their apparent authority, and their principal is liable. *Gillis* v. *Duluth, etc., R. Co.,* 34 Minn. 301, (25 N. W. Rep. 603.) They were keeping within the general scope of their authority, although acting contrary, perhaps, to private instructions. This made their principal liable, and such a rule is necessary to prevent fraud, and encourage confidence in dealing, 2 Kent, Comm. 620.

Order affirmed.