No. 19,453.

W. R. STEWART, *Appellee,* v. W. B. MURPHY, *Appellant.*

SYLLABUS BY THE COURT.

1. PLEADINGS—*Inconsistent Causes of Action—Raised for First Time on Appeal.* An objection, that causes of action set out in a petition are inconsistent, not called to the attention of the trial court, will not be considered when presented for the first time in this court.

2. LEASE—*Implied Covenant for Peaceable Possession.* As against a lessor, or any one holding under him, a covenant of quiet enjoyment of the premises is implied in a lease silent on that subject.

3. SAME — *Breach — No Possession Given — Damages — Loss of Profits.* Loss of profits, when they can be ascertained, is a proper measure of damages where by the act of a lessor the tenant is deprived of the use and occupation of the premises covered by the lease.

4. SAME—*Former Tenant—In Rightful Possession.* A lessee, working upon the leased premises on the first day of his term, does not thereby obtain possession thereof, where the premises are in the rightful possession of a prior tenant.

5. SAME—*Verdict and Judgment Sustained.* There is nothing in this case to indicate that the verdict was given under mistake, or the influence of passion or prejudice, nor that the verdict and judgment are contrary to the evidence.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed May 8, 1915. Affirmed.

*P. L. Courtright,* of Independence, for the appellant.

*S. H. Piper,* of Independence, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: This is an appeal from a judgment for damages for failure to deliver possession of leased premises.

The defendant leased to the plaintiff eighty acres of land in Montgomery county, but was unable to deliver

possession of the premises because a former tenant held over under a lease not legally terminated. There are two causes of action set out in the petition. Under the first the plaintiff sought to recover the consideration paid for the lease. This was not contested by the defendant, was included in the verdict, and was remitted by the plaintiff before judgment. The second cause of action, as stated in the petition, is as follows:

"For a second and further cause of action the said plaintiff hereby refers to his first cause of action and makes all the allegations and averments thereof a part of this cause of action and further alleges that the said defendant has failed and neglected to place and put said plaintiff in the possession of said real estate as under his said contract of lease he was obligated and bound to do, and that by reason thereof said plaintiff has been deprived of the use of said real estate for the term for which it was leased to him, and that the fair and reasonable rental value of the use of said premises to said plaintiff during said term is the sum of $500.00, and that said plaintiff has been damaged by reason of said defendant's failure and neglect to comply with the terms, both express and implied, of said lease, and to place and put said plaintiff in the possession of said premises, in the aforesaid sum of $500.00, and which sum is now justly due and owing from the said defendant to said plaintiff."

(1) On the trial the defendant objected to the introduction of evidence on the second cause of action because it did not state facts sufficient to constitute a cause of action, and because the lease contained no warranty of possession. This objection was overruled. A demurrer to the plaintiff's evidence was also overruled. An objection urged against the second cause of action stated in the petition and against the evidence to sustain it, is that the plaintiff's two causes of action are inconsistent. This matter seems not to have been called to the attention of the trial court, and is now presented for the first time. It is now too late. (*Walker v. Armstrong,* 2 Kan. 198, 222; *Green v. Dunn,* 5 Kan. 254; *Moore v. Wade,* 8 Kan. 380; *Wilson v.*

*Fuller,* 9 Kan. 176; *K. P. Rly. Co. v. Mihlman,* 17 Kan. 224; *Water Co. v. Hill,* 46 Kan. 145, 26 Pac. 412; *Rouse v. Bartholomew,* 51 Kan. 425, 32 Pac. 1088; *Board of Education v. Jacobus,* 83 Kan. 778, 112 Pac. 612; *Gorrell v. Battelle,* 93 Kan. 370, 372, 144 Pac. 244; *Insurance Co. v. Baer,* 94 Kan. 777, 147 Pac. 840.)

(2) It is urged that there is no warranty in the lease of the quiet enjoyment of the premises. This is correct, unless one is implied. The lease recites that the party of the first part has this day leased and rented unto the party of the second part, for the term of one year, commencing on the first day of March, 1913, etc. To enjoy the benefits secured by this contract the lessee —the plaintiff in this action—must be in possession of the premises. If he can not have such possession, the provisions of the contract are defeated so far as he is concerned. In a sale of personal property there is an implied warranty or covenant on the part of the seller that he is the owner of the property and has the right to sell the same. Unless there is an implied covenant for quiet enjoyment of the premises a landowner may lease property to different persons for the same period, and not be liable because of failure to deliver possession under the leases. It is true that when parties enter into a written contract that contract is presumed to contain all the terms of their agreement, but many times conditions are implied by law on which the contract itself is silent. It would be a harsh rule that would permit a landowner to lease land to a person, and then, without fault on the part of the lessee, prevent him from going upon or possessing the premises. The authorities are not united in holding that a covenant of quiet enjoyment is implied in a lease. In a Note in 9 L. R. A., n. s., 1127, it is stated that the authorities upon this point are in direct conflict, and cases are there cited on both sides of the controversy. The weight of authority, however, is that in every lease of land a covenant of quiet enjoyment is implied when the lease is silent on that subject.

"The lessor impliedly covenants to put the lessee in possession at the beginning of the term as against a prior tenant wrongfully holding over." (*Sloan v. Hart*, 150 N. Car. 269, 63 S. E. 1037, 21 L. R. A., n. s., 239, headnote, ¶ 1.)

In *Sloan v. Hart*, supra, this language is found:

"All authorities are agreed that, if Josh Simon, the prior tenant, held over rightfully under the terms of his lease, the defendants would be liable, for to hold otherwise would be giving to the defendants the benefits of their own wrong." (p. 271.)

"Ordinarily there is an implied covenant in a lease that the demised premises shall be open to entry by the lessee at the time fixed in the lease as the beginning of the term." (*Herpolsheimer v. Christopher*, 76 Neb. 352, 355, syl. ¶ 1, 111 N. W. 359, 9 L. R. A., n. s., 1127.)

"Where the lease contains no stipulation to the contrary, there is an implied covenant on the part of the lessor that the premises shall be open to entry by the lessee at the time fixed by the lease for him to take possession." (24 Cyc. 1049.)

"A formal instrument of lease ordinarily contains an express covenant on the part of the lessor for quiet enjoyment by the lessee, but, according to the weight of authority, even though such a covenant is not expressed, it will be implied." (1 Tiffany, Landlord and Tenant, § 79, p. 517.)

"The making of a contract to let land, or the making of a lease for the land, from a certain date, binds the lessor to make the lease and deliver the possession." (Trickett, Landlord and Tenant, § 4, p. 3.)

"The law supposes that when a man makes a lease, he has a good title to the land, and, consequently, power to lease it; and an engagement to this effect on the part of a lessor is therefore always implied." (1 Taylor's Landlord and Tenant, 9th ed., § 304, p. 367.)

"It is now the established rule that in every lease or demise of land, a covenant for quiet enjoyment is implied." (1 McAdam on Landlord and Tenant, 4th ed., § 118, p. 402.)

An extended note on "Covenant for quiet enjoyment" is found in 53 Am. St. Rep. 113-120.

"The words 'grant and demise' in a lease for years, create an implied warranty of title and a covenant for quiet enjoyment." (*Stott et al. v. Rutherford,* 92 U. S. 107, syl. ¶ 1, 23 L. Ed. 486.)

"Valid lease may be made of land then in possession of lessor's tenant, under an unexpired lease; and the lessor is answerable in damages to his lessee if he fails to dispossess such tenant after the expiration of the first lease, and to deliver possession pursuant to the terms of the first lease." (*Rice v. Whitmore,* 74 Cal. 619, 16 Pac. 501, 5 Am. St. Rep. 479, syl. 1.)

"It is well settled at common law, that a covenant for quiet enjoyment is implied in every mutual contract for the leasing and demise of land, by whatever form of words the agreement is made; and for the breach of such covenant occasioned through any fault of the lessor, the lessee has his remedy against the lessor for whatever damages he may have sustained." (*Eldred v. Leahy,* 31 Wis. 546, 551. See, also, *Hammond v. Jones,* 41 Ind. App. 32, 37, 83 N. E. 257.)

We must hold with this weight of authority and better reasoning, that there is a covenant of quiet enjoyment implied in a lease.

This disposes of two other complaints of the defendant, relating to this subject. One is, that he made an unsuccessful attempt to remove the prior tenant, and contends that because of this effort he is not liable to the plaintiff for damages sustained by him by reason of his failure to obtain possession of the premises. The other complaint is, that the court refused to instruct the jury as follows:

"You are instructed that where, through no fault of the defendant's own, the defendant is unable to carry out his contract, the plaintiff cannot recover the value of his bargain, and the measure of damages if you find that through no fault of the defendant he was unable to carry out his contract with plaintiff in this matter is rent as consideration paid and the actual expense incurred."

The difficulty with these complaints is that the prior tenant held the premises legally. The defendant leased

the premises to this plaintiff for a term, during which the prior tenant had a right to their occupancy under the law.

(3) Another complaint concerns the measure of damages. Over the objection of the defendant, the plaintiff was permitted to testify that he believed he could have made $600 out of the place. The court refused to strike out other evidence of the plaintiff concerning the crop of hay grown on the land for the previous year, and the amount of oats that might have been raised on the land during the year covered by the lease. The defendant asked that the jury be instructed that probable profits in the business or undertaking, which might have resulted to the plaintiff had the terms of the lease been complied with, can not be taken into consideration in estimating his damages, as they are too speculative and conjectural. In *O'Neal v. Bainbridge,* 94 Kan. 518, 146 Pac. 1165, this court said that loss of profits, when they can be ascertained, is a proper measure of damages for refusing to permit a tenant to occupy the premises covered by a lease. Following that case, we say that loss of profits, when they can be ascertained, is a proper measure of damages, where by the act of the landlord the tenant is deprived of the use and occupation of the premises covered by a lease. The rule allowing loss of profits as a measure of damages is not new in this state. (*Larabee v. Railway Co.,* 85 Kan. 214, 116 Pac. 901; *Mensing v. Wright,* 86 Kan. 98, 119 Pac. 374; *Skinner v. Gibson,* 86 Kan. 431, 121 Pac. 513.)

(4) The defendant contends that the plaintiff was in possession of the premises on the first day of March, the first day of the term, and for that reason the defendant is not liable. We can not agree with the defendant in this matter. The plaintiff was on the premises on that day and did some work there, but the prior tenant was in possession thereof, and what the plaintiff did was in violation of that tenant's rights.

Newton v. Insurance Co.

(5) It is next argued that "the verdict was given under mistake; or the influence of passion or prejudice," and that "the verdict and judgment is contrary to the evidence. There is nothing to indicate passion or prejudice, and the verdict as rendered was supported by the evidence. One hundred and fifteen dollars of the verdict was remitted. With this eliminated, there was no mistake.

The judgment is affirmed.