No. 22,585.

GEORGE AXTELL, an Infant, by A. H. AXTELL, His Next Friend, *Appellant*, v. THE CITY OF NEWTON, *Appellee*.

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Permitting Stone to Remain in Dangerous Position in Alley—Personal Injuries—Changing Grounds for Recovery on Appeal.* Where one is injured by a large stone falling on him in an alley, and, in an action against the city for damages on account of the injuries sustained by him, bases his right to recover on the knowledge of the city that the stone was so placed that it was liable to fall, he cannot, in the supreme court secure a reversal of the judgment against him by there contending for the first time that even if the city did not know of the dangerous condition of the stone it is liable because the stone was an obstruction in the alley.

2. SAME—*Instructions.* Where the substance of instructions requested are given there is no error in refusing to give those requested.

3. SAME—*Obstruction in Alley—Kept There Without Permission from City.* Knowledge on the part of the city that there is an obstruction in an alley and a request from a street commissioner that the obstruction be kept within certain limits do not amount to authority or express permission to keep the obstruction in that place.

Appeal from Harvey district court; FRANK F. PRIGG, judge. Opinion filed December 11, 1920. Affirmed.

*J. D. Houston, H. W. Hart,* both of Wichita, and *Ezra Branine,* of Newton, for the appellant.

*F. L. Martin,* of Hutchinson, and *H. C. Bowman,* of Newton, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff, a boy ten years old, by his next friend, commenced this action to recover judgment for injuries sustained by him in an alley in the city of Newton. Judgment was rendered in favor of the defendant, and the plaintiff appeals. He was injured by a stone, weighing about a ton, falling on his foot, crushing it so that amputation was necessary to save his life. The stone was the property of a dealer in monuments, and had been in the alley with the knowledge of the city for a number of months. The boy was passing

Axtell v. City of Newton.

through the alley, and by coming in contact with the stone caused it to fall on him.

1. The principal proposition argued by the plaintiff is that the city is liable because it permitted the stone to remain in the alley, notwithstanding that the city did not know that the stone, at the time of the injury to the plaintiff, was liable to fall and was therefore dangerous to any one who might pass by it. The petition was broad enough to enable the plaintiff to recover on this ground, and the evidence tended to establish the facts necessary to be proved to recover thereon, but it does not appear that the plaintiff sought to recover on this theory, or that it was presented to the trial court, unless on the hearing of the motion for a new-trial. The defendant insists that the question was then presented for the first time, but the plaintiff contends that the question was in the case from the beginning. This makes necessary an extensive examination of the petition, the plaintiff's trial statement, the instructions requested by the plaintiff, and the questions submitted to the jury, from each of which we quote.

The petition in part alleged:

"That on said 28th day of September, 1917, and for a long time prior thereto, said defendant wrongfully and negligently permitted a large and massive stone, commonly known as a monument, to stand upon its irregular base and be in said public alley at a point near the west side thereof and about one hundred (100) feet more or less from said south end thereof, the more exact distance said plaintiff being now unable to state; and that said stone or monument was about three (3) feet, six (6) inches high, about twenty-three and one-half (23½) inches wide and about nineteen (19) inches deep and weighed about 1800 or 2000 pounds; and that the base of said stone or monument was irregular on the bottom, caused by a triangular shaped portion thereof projecting about three (3) inches below the other portion of the bottom of said stone or monument and that said triangular shaped portion projecting, as aforesaid, was about the center of said stone or monument and was about seven (7) inches wide at one end and runs to a point the long way of the bottom of said stone or monument at a distance of about nine (9) inches; and that on account of the peculiar construction and shape of said stone or monument and the insecure emplacement and the irregular base of same, and on account of the sloping surface of said pavement on which it stood, as aforesaid, the said stone or monument was insecure, easily unbalanced and top heavy and rendered easily tipped over and liable to fall upon said pavement and on persons passing in said alley; and that said stone or monument standing and being in the said alley, as aforesaid, was a.

dangerous obstruction to the general public and to persons rightfully using said alley and a dangerous object and nuisance therein and well calculated and quite liable to be tipped over and caused to lose its balance and fall upon said pavement or on passing persons, by slight force, interference or contact and even without any force or interference whatever; and that said defendant negligently permitted said stone or monument to be and remain in said public alley, as aforesaid, and thereby negligently obstructed said public alley and endangered travel therein and made the public use thereof dangerous to the general public and thereby negligently created a dangerous obstruction and nuisance in said alley as aforesaid, and that said stone or monument remained in and was permitted to remain in such condition in said alley for such time, to wit, over twelve (12) months, that the city officials of said defendant in control of the streets and alleys of said city must and should have known thereof, and the plaintiff alleges that said defendant and its said officials did actually know thereof in ample time to have remedied the danger and to have removed the said obstruction and nuisance and thereby have avoided the injuries to said plaintiff, as herein set forth; and plaintiff further alleges that notwithstanding the same the said defendant negligently failed to take any steps whatever to remove such obstruction, nuisance and danger and avoid the injury."

Counsel for the plaintiff in stating the case to the jury, among other things, said:

"Now, the evidence will show, gentlemen of the jury, that this rock had no business in the alley. The evidence will show that that alley for forty years has been dedicated to the public, and we believe that under the court's instructions that this boy had as much right to use the alley as he had to use the sidewalk on Main street; that this great monument was permitted to be set out in this alley in the condition it was in, and as a result of the city's negligence in leaving this great monument in the alley as it was, this little boy was injured, and this condition is here and this case is for you gentlemen to decide."

The evidence conclusively showed that the stone was in the alley, that it had been there for a number of months, and that the city had knowledge of that fact. The jury answered one set of special questions, probably submitted at the request of the plaintiff, as follows:

"1. At the time of and before the injury to the plaintiff was the stone in question a menace and danger to children or adults who might come in contact with same, with more or less force, casually or incidentally, while traveling on the pavement through said alley? Ans. Yes.

"2. If you answer the last foregoing question in the affirmative, state for how long prior to the injury in question had the stone remained in said condition. Ans. Not to exceed forty-eight hours.

"3. Is it not a fact that the stone in question had, for at least five

or six months, been in such a situation and so emplaced that it was cal-
culated to cause injury to travelers in the paved part of the alley, who
might come in contact with it, and thoughtlessly and unintentionally push
or pull same with slight force? Ans. No.

"4. If you find that the stone was a menace and danger to travelers
in the alley, then state if the city officers or commissioners knew, or by
the exercise of ordinary care, should and would have known of such
danger from said stone, in time to have removed the danger and avoided
the injury of plaintiff by the use of ordinary care and prudence in the
premises. Ans. No."

Other questions submitted at the request of the defendant
were answered as follows:

"1. If you find for plaintiff then state fully in what the negligence of
defendant on which you base your verdict consisted. Ans. Did not find
for plaintiff and found no negligence on part of defendant.

"2. Do you find that the city had actual knowledge that the stone
was standing and leaning away from the wall in the position it is claimed
that it was in when plaintiff touched it? Ans. No.

"3. If you answer the last question yes, what city officer do you find
had such knowledge and when and how did he acquire it? Ans. None.

"4. Was the stone that injured the plaintiff standing in the same po-
sition when the plaintiff touched it that it was in on the morning of the
day before? Ans. No.

"5. Was said stone leaning up against the wall on the morning of the
day before plaintiff was injured? Ans. Yes.

"6. Would said stone when leaning against the wall fall down be-
cause of a slap or touch of the hand? Ans. No.

"7. Did Mr. Gilbert or any other city officer know that the stone in
question was leaning away from the wall and in the position it was in
when plaintiff touched it, in time to prevent the injury? Ans. No.

"8. If you answer the last question yes, state how he gained such
knowledge? Ans. None."

Of the instructions requested by the plaintiff, those that
might refer to the ground of recovery now presented were as
follows:

"The jury are further instructed that the city is liable for negli-
gently permitting its streets and alleys to remain in a dangerous or
unsafe condition, no matter how such condition was caused; and any
person traveling upon the public streets or alleys of a city has a right
to use any portion of a street or alley for that purpose and has a right
to assume that such street or alley is in a safe condition and to act upon
that assumption, relying upon the belief that the city has performed its
duty and placed and maintained such street or alley in safe condition.

"The City of Newton had authority and control over its public streets
and alleys within its corporate limits, but it was its duty to exercise such

authority and control for the good of the general public; and the city would have no right to allow unnecessary obstructions in such streets and alleys merely for private purposes, or for the accommodation of private individuals; and it was the duty of the proper authorities of the City of Newton, under the laws of the land, to use ordinary care and precaution to keep its streets and alleys in a reasonably safe condition for use in the ordinary and usual mode, by persons lawfully traveling and passing therein.

. .    .    .    ..    .    .    .    .    .    .    .    .

"In determining the question of the liability of the City of Newton to the plaintiff in this case, you are instructed that the mere fact that the obstruction in question which is alleged to have caused the injury to the plaintiff was placed in the alley by J. J. Norton and was not placed there by the city would not relieve the city of the duty of requiring its removal, if it was a menace to the safety of travelers and an obstruction to traveling along the paved, improved part of said alley. It was the duty of the city under the law of this state, to use reasonable care to keep the public alleys in reasonably safe condition for ordinary travel in the usual mode and it was also the duty of the city to remove or require the removal of unnecessary obstructions to travel placed in the improved and paved part of the public streets or alleys by private individuals, and the city would be liable to the person, injured while using the paved and improved part of the public alley or street in the usual manner and without fault on their part, caused by an unnecessary obstruction placed in the paved and improved part of the alley or street by a private individual and knowingly allowed to remain there by the city, after it had had an ample opportunity to learn of and remove the obstruction from the street; and when we use the word 'public street or alley' we mean every part of the street or alley that is improved and paved, including every part, from side to side, of the paved, used and improved street or alley."

None of these requested instructions presented the ground of recovery now under consideration.

The court instructed the jury that—

"It is the duty of the defendant city to keep said alley in such a condition that it would be reasonably safe for the public to travel on said alley; that is, that it was the duty of said city to use ordinary care in keeping said alley safe for the use of the public, and the failure to use such ordinary care would be negligence, and if the defendant was negligent in failing to use ordinary care to keep said alley in a reasonably safe condition and had notice as notice is herein defined, then the defendant would be liable for any injuries to the plaintiff of which such negligence of the defendant was the proximate cause, unless you further find that the plaintiff was guilty of contributory negligence as alleged by the defendant.

. ..    .    .    .    .    .    .    .    .    .    .    .    .

"That in order to make the defendant city liable for injuries result-

Axtell v. City of Newton.

ing from an obstruction in the public alley, it must appear either that the city had notice of the dangerous obstruction or that it was a patent dangerous obstruction and had continued so long that notice might reasonably be inferred, or that the defect was one which, with reasonable and proper care, should have been ascertained and remedied. The mere existence of an obstruction in an alley does not render the city liable, but the negligence of the city arises only when the city fails to remove the dangerous obstruction within a reasonable time after having notice thereof, and the notice may be either actual notice or notice inferred, as above stated in this instruction."

No instruction was requested that the city would be liable for an injury caused by the stone even if the city did not know that the stone was dangerous to those passing by it. Apparently the petition was drawn, evidence was introduced, instructions were requested by the plaintiff, instructions were given by the court, and questions were submitted to the jury on the theory that the plaintiff must establish that the city had knowledge of the dangerous condition of the stone before he could recover. On that theory the verdict and findings of the jury were against the plaintiff, and he cannot recover. The plaintiff is concluded by the manner in which he presented his cause to the trial court. (*Board of Education v. Jacobus,* 83 Kan. 778, 112 Pac. 612; *Stewart v. Murphy,* 95 Kan. 421, 422, 148 Pac. 609; *Watson v. Watson,* 104 Kan. 578, 581, 180 Pac. 242, 182 Pac. 643; *Fairbanks, Morse & Co. v. Inglitt,* 106 Kan. 488, 490, 188 Pac. 248.)

2. It is insisted that the court committed error in not giving the instructions requested by the plaintiff. An examination of those given reveals that the substance of those requested was given by the court, and therefore the plaintiff has no cause for complaint concerning the refusal of the court to give the instructions requested.

3. The plaintiff argues that the defendant expressly authorized the owner of the stone to keep it in the alley. It does not appear that this question was presented to the trial court or was passed on by the jury. The question is now presented for the purpose of fortifying the contention of the plaintiff concerning the liability of the city on account of the dangerous condition of the stone. The evidence abstracted does not show that express permission was given by the city to the owner of

the stone to keep it in the alley. The street commissioner re-
monstrated with the owner concerning its being in the alley,
and the owner insisted that he had no place in which to store it,
to which the street commissioner replied, "Keep it inside of the
poles." There was a line of telegraph poles along the side of
the alley. This does not show express permission or license; it
does show that the city knew that the stone was in the alley and
permitted or tolerated it to remain there.

The judgment is affirmed.